UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAWRENCE R. ROSEN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| AGFEED INDUSTRIES, INC., JOHN A. STADLER, GERARD DAIGNAULT, RAYMOND M. CESCA, CLAYTON T. MARSHALL, EDWARD PAZDRO, SONGYAN LI, SELINA JIN, LIANGFAN YAN and JUNHONG XIONG, | |
| Defendants. | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired the securities of AgFeed Industries, Inc. ("AgFeed" or the "Company") between March 12, 2008 and September 29, 2011, inclusive (the "Class Period"), against AgFeed and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against AgFeed and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the Securities and Exchange Commission ("SEC").

2. Defendant AgFeed is an international agribusiness that deals in animal nutrition products and commercial hog production in the United States and China. AgFeed's animal nutrition business serves hog producers throughout southeastern China through five feed mills where AgFeed produces additive premix, concentrates, and complete feed.

3. During the Class Period, defendants issued materially false and misleading statements regarding the Company's business practices and financial results. Specifically, defendants failed to disclose the Company was improperly accounting for its accounts receivable and certain farm-related assets in violation of Generally Accepted Accounting Principles ("GAAP"). As a result of defendants' false statements, AgFeed's stock traded at artificially inflated prices during the Class Period, reaching a Class Period high of $20.94 per share on May 5, 2008.

4. On August 2, 2011, AgFeed issued a press release announcing disappointing preliminary second quarter fiscal 2011 financial results. According to the release, the Company expected to report a net loss of $17 million for the quarter due in substantial part to its need to take a $9.2 million charge for the collection of outstanding receivables in its animal nutrition

business and an additional $5 million to increase its allowance for bad debts from $1.9 million to $7 million.

5. On this news, AgFeed shares dropped by $0.65 per share, to close at $1.34 per share on August 2, 2011, a one-day decline of more than 32% on high volume.

6. Thereafter, on August 9, 2011, AgFeed filed its Form 10-Q for its second quarter of fiscal 2011. The Company reported $13.2 million in accounts receivable, net of a $7 million allowance for doubtful accounts as of June 30, 2011.

7. Then, on September 29, 2011, after the market closed, AgFeed issued a press release announcing that its Board had established a special committee to conduct an investigation into the accounting practices of its Chinese operations. The release stated in part:

> AgFeed Industries, Inc. ("AgFeed" or the "Company") announced today that its Board of Directors has established a special committee to investigate the accounting relating to certain of the Company's Chinese farm assets (acquired during 2007 and 2008) used in its hog production business, as well as the validity and collectability of certain of the Company's accounts receivables relating to its animal nutrition business in China and any other issues that may arise during the course of the investigation.

8. As a direct result of this news, AgFeed stock declined another 20% on high volume to close at $0.52 per share on September 30, 2011.

9. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

    (a) AgFeed improperly accounted for its revenue and accounts receivable such that its financial statements were presented in violation of GAAP;

    (b) AgFeed improperly accounted for certain farm-related assets the Company acquired in 2007 and 2008 in violation of GAAP; and

(c) Defendants failed to maintain proper internal controls related to AgFeed's accounting for its revenue and assets, including its accounts receivable and certain farm-related assets.

10. As a result of defendants' false statements and omissions, AgFeed securities traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 97% from their Class Period high of $20.94 per share.

## JURISDICTION AND VENUE

11. Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

12. Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made into or issued from this District. AgFeed maintains operations at 100 Bluegrass Common Blvd., Suite 310, Hendersonville, Tennessee.

13. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

## PARTIES

14. Plaintiff Lawrence R. Rosen purchased AgFeed shares as described in the attached certification and was damaged thereby.

15. Defendant AgFeed is a Nevada Corporation with headquarters in Nanchang City, Jiangxi Province, China. The Company engages in the animal nutrition and commercial hog production businesses in the United States and China.

16. Defendant John A. Stadler ("Stadler") has served as Chairman of the Board and Interim Chief Executive Officer ("CEO") of AgFeed since February 2011, and as a director since

- 3 -
Case 3:11-cv-01043    Document 1    Filed 11/01/11    Page 4 of 19 PageID #: 4

September 2010. Stadler also served as the Company's Interim President from February 2011 to March 31, 2011.

17. Defendant Gerard Daignault ("Daignault") has served as Chief Operating Officer ("COO") of AgFeed since August 2008 and has been President and CEO of the Company's animal nutrition business since November 2010.

18. Defendant Raymond M. Cesca ("Cesca") has served as the Company's President since April 2011.

19. Defendant Clayton T. Marshall ("Marshall") has served as Chief Financial Officer ("CFO") of AgFeed since July 15, 2011.

20. Defendant Edward Pazdro ("Pazdro") served as Chief Financial Officer ("CFO") of AgFeed from February 2011 to July 2011 and as acting CFO from November 2010 to February 2011. Pazdro also serves as CFO of AgFeed International Protein Technology Corp., a joint venture focusing on enhancing hog production systems for Chinese and other Pan Asian clients, and the hog division of AgFeed.

21. Defendant Songyan Li ("Li") served as Executive Chairman and Chairman of the Board of AgFeed from December 2006 to February 2011 and as a director from October 2006 to February 2011. Following his departure as Executive Chairman and Chairman of the Board, Li remained with AgFeed as Vice Chairman of the Company's hog production business.

22. Defendant Selina Jin ("Selina") served as the Company's CFO from April 15, 2009 to November 9, 2010.

23. Defendant Liangfan Yan ("Yan") served as the Company's CFO from 2006 to April 15, 2009. Since April 15, 2009, defendant Yan has served as the Company's controller.

- 4 -

24. Defendant Junhong Xiong ("Xiong") served as CEO and a director of AgFeed from November 2006 to February 2011. Following his departure as CEO, Xiong remained with the Company as Chairman of the animal nutrition business.

25. The defendants referenced in ¶¶16-24 above are referred to herein as the "Individual Defendants."

26. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of AgFeed's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

27. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about AgFeed. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of AgFeed securities was a success, as it: (i) deceived the investing public regarding AgFeed's prospects and business; (ii) artificially inflated the prices of AgFeed securities; and (iii) caused plaintiff and other members of the Class to purchase AgFeed securities at inflated prices.

## BACKGROUND

28. AgFeed is engaged in the animal nutrition and commercial hog production businesses in the United States and China through its operating subsidiaries. AgFeed's animal nutrition business consists of the manufacture, marketing, and sale of premix, concentrate, and

- 5 -

complete feed for use in the Chinese animal husbandry markets, focusing almost exclusively on hog production. Premix is an animal feed additive that is used in commercial animal production worldwide. AgFeed entered the hog breeding and production business in China in November 2007. In this business, the Company mainly produces hogs for processing and sells breeding stock. AgFeed entered the hog breeding and production business in the United States in September 2010, with the acquisition of M2P2, LLC.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

29. On March 12, 2008, AgFeed issued a press release announcing its financial results for the fiscal year ended December 31, 2007. The Company reported net income of $6.66 million, or $0.25 diluted earnings per share ("EPS"), and revenue of $36.16 million for the year.

30. On March 14, 2008, AgFeed filed its Form 10-K with the SEC for the fiscal year ended December 31, 2007. The Company reported an accounts receivable balance of $6.1 million as of the end of the period, net of an allowance for doubtful account balance of $191,497. The Form 10-K further stated in part:

> *Allowance For Doubtful Accounts*. We continually monitor customer payments and maintains [sic] a reserve for estimated losses resulting from our customers' inability to make required payments. In determining the reserve, we evaluate the collectibility of our accounts receivable based upon a variety of factors. In cases where we become aware of circumstances that may impair a specific customer's ability to meet its financial obligations, we record a specific allowance against amounts due. For all other customers, we recognize allowances for doubtful accounts based on our historical write-off experience in conjunction with the length of time the receivables are past due, customer creditworthiness, geographic risk and the current business environment. Actual future losses from uncollectible accounts may differ from our estimates.
>
> \* \* \*
>
> The Company maintains reserves for potential credit losses on accounts receivable. Management reviews the composition of accounts receivable and analyzes historical bad debts, customer concentrations, customer credit worthiness, current economic trends and changes in customer payment patterns to evaluate the adequacy of these reserves.

31.     On May 15, 2008, AgFeed issued a press release announcing its first quarter 2008 financial results.  The Company reported net income of $919,297, or $0.03 diluted EPS, and revenue of $12.2 million for the quarter.

32.     On May 15, 2008, AgFeed filed its Form 10-Q for the first quarter ended March 31, 2008, reporting $8.07 million in accounts receivable as of the end of the quarter, net of an allowance for doubtful accounts balance of $222,879.  The Form 10-Q further stated in pertinent part:

> The Company maintains reserves for potential credit losses on accounts receivable. Management reviews the composition of accounts receivable and analyzes historical bad debts, customer concentrations, customer credit worthiness, current economic trends and changes in customer payment patterns to evaluate the adequacy of these reserves.
>
> \*     \*     \*
>
> *Allowance For Doubtful Accounts*. The Company continually monitors customer payments and maintains a reserve for estimated losses resulting from its customers' inability to make required payments. In determining the reserve, the Company evaluates the collectibility of its accounts receivable based upon a variety of factors. In cases where the Company becomes aware of circumstances that may impair a specific customer's ability to meet its financial obligations, the Company records a specific allowance against amounts due. For all other customers, the Company recognizes allowances for doubtful accounts based on its historical write-off experience in conjunction with the length of time the receivables are past due, customer creditworthiness, geographic risk and the current business environment.

33.     On August 11, 2008, AgFeed issued a press release announcing its second quarter 2008 financial results.  The Company reported net income of $3.9 million, or $0.12 diluted EPS, and revenue of $35.6 million for the quarter.

34.     On August 11, 2008, AgFeed filed its Form 10-Q with the SEC for the second quarter ended June 30, 2008.  The Form 10-Q reported $8.3 million in accounts receivable as of the end of the quarter, net of an allowance for doubtful accounts balance of $235,702.

35. On November 13, 2008, AgFeed issued a press release announcing its third quarter 2008 financial results. The Company reported net income of $8.2 million, or $0.25 diluted EPS, and revenue of $49.4 million for the quarter.

36. On November 14, 2008, AgFeed filed its Form 10-Q for the third quarter ended September 30, 2008. The Form 10-Q reported $10.5 million in accounts receivable as of the end of the quarter, net of an allowance for doubtful accounts balance of $265,908.

37. On March 16, 2009, AgFeed issued a press release announcing record 2008 financial results. The Company reported net income of $16.95 million, or $0.54 diluted EPS, and revenue of $143.66 million for the year.

38. On March 16, 2009, AgFeed filed its Form 10-K with the SEC for the fiscal year ended December 31, 2008. The Form 10-K reported $9.5 million in accounts receivable as of the end of the year, net of an allowance for doubtful accounts balance of $520,413. The Form 10-K further stated in part:

> The Company maintains reserves for potential credit losses on accounts receivable. Management reviews the composition of accounts receivable and analyzes historical bad debts, customer concentrations, customer credit worthiness, current economic trends and changes in customer payment patterns to evaluate the adequacy of these reserves.

39. On May 11, 2009, AgFeed filed its Form 10-Q with the SEC for the first quarter of 2009. The Company reported net income of $3 million, or $0.08 diluted EPS, and revenue of $33.4 million. The Company reported $11.9 million in accounts receivable, net of a $282,958 allowance for doubtful accounts as of March 31, 2009.

40. On August 10, 2009, AgFeed filed its Form 10-Q with the SEC for the second quarter of 2009. The Company reported $14.6 million in accounts receivable, net of a $69,660 allowance for doubtful accounts as of June 30 2009.

41. On August 11, 2009, AgFeed issued a press release announcing its second quarter 2009 financial results. The Company reported net income of $1.2 million, or $0.03 diluted EPS, and revenue of $38.5 million for the quarter.

42. On November 9, 2009, AgFeed filed its Form 10-Q with the SEC for the third quarter of 2009. The Company reported $16.2 million in accounts receivable, net of a $246,847 allowance for doubtful accounts as of September 30, 2009.

43. On November 10, 2009, AgFeed issued a press release announcing its third quarter 2009 financial results. The Company reported net income of $2.9 million, or $0.07 diluted EPS, and revenue of $45.12 million for the quarter.

44. On March 8, 2010, AgFeed filed its Form 10-K with the SEC for the fiscal year ended December 31, 2009. The Company reported $14.4 million in accounts receivable, net of a $415,765 allowance for doubtful accounts as of December 31, 2009.

45. On March 9, 2010, AgFeed issued a press release announcing record revenues for 2009. The release stated in part:

> AgFeed Industries, Inc., one of the largest independent hog production and animal nutrient companies in China, today announced record levels of revenue in both of its operating units: hog production and animal nutrition. Production volumes increased by 66% in the company's hog division and 56% in the animal nutrition division.

46. On May 10, 2010, AgFeed filed its Form 10-Q with the SEC for the first quarter of 2010. The Company reported net income of $1.07 million, or $0.02 diluted EPS, and revenue of $52.9 million. The Company reported $23 million in accounts receivable, net of a $498,612 allowance for doubtful accounts as of March 31, 2010.

47. On May 11, 2010, AgFeed issued a press release announcing its first quarter 2010 financial results. The release stated in part:

> AgFeed Industries, Inc., one of the largest independent hog production and animal nutrient companies in China, today announced its results for the first quarter of

2010. Revenue for the first quarter reached $52.9 million an increase of 58% compared to the first quarter of 2009. Production volumes increased by 24% in the Company's hog division and 119% in the animal nutrition division, as compared to the same period in 2009.

\* \* \*

Mr. Junhong Xiong AgFeed's President observed, "We are pleased with the results we achieved in a challenging operating environment. During the quarter, the average hog price was 11% less than the first quarter of last year. Many of our customers are struggling to withstand the combined challenge of low hog prices and increased feed prices due to the high cost of corn. In order to support our animal nutrition customers and cement our market position, AgFeed has chosen to exploit its relative financial strength by extending payment terms to its customers. Facing similar pressures in our Hog Division, we were able to sell hogs at relatively advantageous prices by accepting payment terms from certain long-standing and credit worthy customers."

48. On August 9, 2010, AgFeed filed its Form 10-Q for the second quarter of 2010. The Company reported $17.4 million in accounts receivable, net of a $609,980 allowance for doubtful accounts as of June 30, 2010.

49. On August 10, 2010, AgFeed issued a press release announcing its financial results for the first two quarters of the year. The release stated in part:

AgFeed Industries, Inc., one of the largest independent hog production and animal nutrient companies in China, today announced its results for the first half of 2010. Revenue for the first half reached $90.5 million an increase of 26% compared to the first half of 2009. Production volumes increased by 92% in the Company's animal nutrition division, and decreased 15% in its Hog Division as compared to the same period in 2009.

\* \* \*

Mr. Gerry Daignault, AgFeed's COO emphasized, "While AgFeed has supported its customers with extended payment terms from time to time, in light of the industry wide operating pressures we limited this practice during the quarter and reduced accounts receivable by over $5.6 million from March 31st. We also reduced our payables by approximately $3.4 million while also continuing our capital investment program to support of expansion in an amount over $3.3 million."

50. On October 11, 2010, AgFeed issued a press release announcing the filing of a Registration Statement for an initial public offering of shares in its subsidiary AgFeed Animal Nutrition Holdings, Inc. ("AANI"). The release stated in part:

> Dr. Songyan Li, AgFeed's Chairman, stated, "We believe that the carve out of AANI will be a positive development for our shareholders and for the business prospects of AANI. Establishing a public market for AANI will provide an independent valuation of one of our business units that we feel has been overlooked by the market, thus unlocking value for AgFeed's shareholders. As a public company in its own right, AANI will have a sharp strategic focus and will have independent access to both debt and equity capital to support its pursuit of a myriad of growth opportunities."

51. On November 9, 2010, AgFeed issued a press release announcing its third quarter 2010 financial results. The release stated in part:

> AgFeed reports continued record results in its animal nutrition business segment with revenue and operating income increasing 59% and 37% respectively for the first three quarters of 2010 as compared to the same period in 2009 and achieving new record levels. AgFeed's U.S. hog production system, which commenced through its acquisition of M2P2 late in the third quarter generated results in line with the Company's plans.

52. On November 9, 2010, AgFeed filed its Form 10-Q with the SEC for the third quarter of 2010. The Company reported a net loss of $20.7 million, or ($0.43) diluted EPS, and revenue of $53.6 million for the quarter. The Company reported $19.9 million in accounts receivable, net of a $536,110 allowance for doubtful accounts as of September 30, 2010.

53. On March 16, 2011, AgFeed filed its Form 10-K with the SEC for the fiscal year ended December 31, 2010. The Company reported $21.9 million in accounts receivable, net of a $707,568 allowance for doubtful accounts as of December 31, 2010.

54. On March 17, 2011, AgFeed issued a press release announcing its 2010 financial results. The Company reported a net loss of $42.7 million, or ($0.90) diluted EPS, and revenue of $243.6 million for the full year. The release stated in part:

> AgFeed Industries, Inc. ("AgFeed" or the "Company"), an international agribusiness company with operations in the U.S. and China and one of the large independent hog producers and manufacturers of animal nutrients in China

announced record levels of revenue in both its animal nutrition and U.S. hog production units for the fourth quarter of 2010 and for the full year 2010. The Company's 2010 fourth quarter and year-end revenues were the highest in company history representing an increase over revenues for the same periods in 2009 of 77.2% and 40.7%, respectively.

*   *   *

The Company's Chief Financial Officer, Edward Pazdro, said, "We have worked closely with outside consultants, auditors and our new management team to thoroughly assess the long-term viability and profitability of our legacy Chinese hog farms, and based on current market conditions, believe that our asset values are appropriate and present a long-term picture of the value of our legacy farms." Mr. Pazdro stated further, "The combination of M2P2's operating discipline with our management information systems will allow us to monitor and execute our strategic plan."

55. On May 10, 2011, AgFeed issued a press release announcing its first quarter 2011 financial results. The Company reported a net loss of $1.55 million and revenue of $93 million for the quarter.

56. On May 10, 2011, AgFeed filed its Form 10-Q with the SEC for the first quarter of 2011. The Company reported $28.6 million in accounts receivable, net of a $1.9 million allowance for doubtful accounts as of March 31, 2011. Furthermore, the Company noted an adjustment it made to its normal protocol for assessing bad debt. The Company replaced its broad "formula-based analysis" and started relying instead on an "individual customer assessment." The Form 10-Q stated in part:

> Accounts receivable are carried at original invoice less an estimate for doubtful accounts. Management reviews the composition of accounts receivable and analyzes historical bad debts, customer concentrations, customer credit worthiness, current economic trends and changes in customer payment patterns to evaluate the adequacy of these reserves. Accounts receivable are written off when deemed uncollectible. Recoveries of trade receivables previously written off are recorded when received.
>
> The Company's accounts receivable and reserves for doubtful accounts are substantially representative of its credit dealings with animal nutrition customers. The Company ages its receivables into traditional 30-day buckets and monitors the customers and balances on a regular basis. Generally the Company uses a formula-based analysis to more broadly assign collection risk to its aging groups primarily over 90 days past due, subject to specific customer review. This

formula-based approach applies a declining percentage of collectability to each bucket-aging category at least 90 days past due as the past due days increase. For the current quarter, however, the Company placed greater reliance on individual customer assessment and then applied an overall factor of collection as its believes the Company is experiencing a new set of market dynamics exacerbated by the reorganization of its animal feed nutrition segment, cash constraints of its long-standing customers related to increasing feed raw material costs and herd expansion initiatives.

57. On August 2, 2011, AgFeed issued a press release announcing disappointing preliminary second quarter fiscal 2011 financial results. According to the release, the Company expected to report a net loss of $17 million for the quarter due in substantial part to its need to take a $9.2 million charge for the collection of outstanding receivables in its animal nutrition business and an additional $5 million to increase its allowance for bad debts from $1.9 million to $7 million.

58. On this news, AgFeed shares dropped by $0.65 per share, to close at $1.34 per share on August 2, 2011, a one-day decline of more than 32% on high volume.

59. Thereafter, on August 9, 2011, AgFeed filed its Form 10-Q for its second quarter of fiscal 2011. The Company reported $13.2 million in accounts receivable, net of a $7 million allowance for doubtful accounts as of June 30, 2011.

60. Then, on September 29, 2011, after the market closed, AgFeed issued a press release announcing that its Board had established a special committee to conduct an investigation into the accounting practices of its Chinese operations. The release stated in part:

> AgFeed Industries, Inc. ("AgFeed" or the "Company") announced today that its Board of Directors has established a special committee to investigate the accounting relating to certain of the Company's Chinese farm assets (acquired during 2007 and 2008) used in its hog production business, as well as the validity and collectability of certain of the Company's accounts receivables relating to its animal nutrition business in China and any other issues that may arise during the course of the investigation.

61. As a direct result of this news, AgFeed stock declined another 20% on high volume to close at $0.52 per share on September 30, 2011.

- 13 -
Case 3:11-cv-01043   Document 1   Filed 11/01/11   Page 14 of 19 PageID #: 14

62. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) AgFeed improperly accounted for its revenue and accounts receivable such that its financial statements were presented in violation of GAAP;

(b) AgFeed improperly accounted for certain farm-related assets the Company acquired in 2007 and 2008 in violation of GAAP; and

(c) Defendants failed to maintain proper internal controls related to AgFeed's accounting for its revenue and assets, including its accounts receivable and certain farm-related assets.

63. As a result of defendants' false statements, AgFeed's stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 97% from their Class Period high.

## LOSS CAUSATION/ECONOMIC LOSS

64. During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of AgFeed securities and operated as a fraud or deceit on Class Period purchasers of AgFeed securities by misrepresenting the Company's business and prospects. Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of AgFeed securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of AgFeed securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

65. AgFeed's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

66. The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of AgFeed who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired AgFeed securities during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

68. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. AgFeed has over 63.9 million shares of stock outstanding, owned by hundreds of persons.

69. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) whether the 1934 Act was violated by defendants;

(b) whether defendants omitted and/or misrepresented material facts;

(c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) whether the prices of AgFeed securities were artificially inflated; and

(f) the extent of damage sustained by Class members and the appropriate measure of damages.

70. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

71. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

73. Plaintiff incorporates ¶¶1-72 by reference.

74. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that

they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

75. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of AgFeed securities during the Class Period.

76. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for AgFeed securities. Plaintiff and the Class would not have purchased AgFeed securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

77. Plaintiff incorporates ¶¶1-76 by reference.

78. The Individual Defendants acted as controlling persons of AgFeed within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of AgFeed securities, the Individual Defendants had the power and authority to cause AgFeed to engage in the wrongful conduct complained of herein. AgFeed controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff reasonable costs and attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 1, 2011

BARRETT JOHNSTON, LLC
GEORGE E. BARRETT, #2672
DOUGLAS S. JOHNSTON, JR., #5782
TIMOTHY L. MILES, #21605


/s/ George E. Barrett
             GEORGE E. BARRETT

217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
tmiles@barrettjohnston.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
davew@rgrdlaw.com
katek@rgrdlaw.com

*Attorneys for Plaintiff*